### HARBISON v. LEWELLYN, Former Collector of Internal Revenue.

District Court W. D. Pennsylvania.    February 13, 1928.

No. 3233.

Internal revenue ⬡⟹7(6)—Dividends declared before August 6, 1917, and subsequently paid, out of earnings accrued prior to March 1, 1913, held not taxable; "distribution" (Revenue Act 1916, § 31(b), added by War Revenue Act 1917, § 1211, Comp. St. § 6336z(b); Revenue Act 1916, § 2(a), Comp. St. § 6336b (a), as re-enacted in § 31(a), as added by § 1211 of War Revenue Act of 1917, Comp. St. § 6336z(a).

Dividends on corporation's stock from earnings or profits accrued prior to March 1, 1913, where declared before August 6, 1917, held not taxable under section 31(b) added to the Revenue Act of 1916 by section 1211 of the War Revenue Act of 1917, Comp. St. § 6336z (b), though dividends were not paid until after August 6, since the declaration of the dividend and not the payment constitutes "distribution" within meaning of statute, in view of Revenue Act 1916, § 2(a), Comp. St. § 6336b (a), as re-enacted in section 31(a), as added by section 1211 of War Revenue Act of 1917, Comp. St. § 6336z(a); section 31(b) being added to protect dividends which were paid or declared with the understanding that they would be tax free.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Distribution.]

At Law. Action by Ralph W. Harbison against C. G. Lewellyn, former Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for plaintiff.

James E. MacCloskey, Jr., and F. H. Atwood, both of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., of Pittsburgh, Pa., for defendant.

GIBSON, District Judge. The plaintiff, one of a number of stockholders of the Harbison-Walker Refractories Company, has brought his action against the defendant to recover income tax which he alleges was illegally assessed against him by the Commissioner of Internal Revenue and illegally collected from him by the defendant. By stip-

ulation, the case was tried by the court without a jury.

### Findings of Fact.

(1) Ralph W. Harbison, the plaintiff, is a citizen of the state of Pennsylvania and a resident of the Western district thereof; and C. G. Lewellyn, the defendant, on June 7, 1918, when the tax hereinafter mentioned was collected, was collector of internal revenue for the Twenty-Third collection district of Pennsylvania.

(2) The Harbison-Walker Refractories Company is a corporation created under the laws of Pennsylvania, and has its principal office in the city of Pittsburgh, in said state. At a meeting of the board of directors of said company, held in Pittsburgh, Pa., on August 3, 1917, said board of directors duly declared an extra dividend of 6 per cent. on the common stock of the company, payable out of the surplus of the company which had accrued prior to March 1, 1913; and by said declaration it was further provided that said extra dividend was payable on August 25, 1917.

(3) At the time of the declaration and payment of the dividend mentioned in the preceding paragraph, the estate of S. P. Harbison, deceased, was the owner of 16,458 shares of the common stock of said Harbison-Walker Refractories Company, and on August 25, 1917, said estate of S. P. Harbison received the sum of $98,748 on account of the said extra dividend of 6 per cent. on the common stock of said company. The plaintiff, at the time of the declaration and payment of said dividend, was one of three beneficiaries of the estate of S. P. Harbison, and received one-third of the sum of $98,748 on account of said extra dividend paid to said estate, and was also the owner, in his own right, of 1,310 shares of the common stock of said company, and received, on August 25, 1917, the sum of $7,860 as a dividend upon said 1,310 shares, in addition to the amount received by him as beneficiary of the S. P. Harbison estate.

(4) The Commissioner of Internal Revenue, on February 9, 1918, issued his ruling that under the provision of section 31(b) of the Revenue Act of 1916, as added by section 1211 of the War Revenue Act of 1917, Comp. St. § 6336z(b), the date of payment of a dividend governs in determining whether a dividend represents a distribution of profits made prior to August 6, 1917, and that dividends declared before this date out of surplus that had accumulated prior to March 1, 1913, but payable after August 6, 1917, should be considered as a distribution from the 1917 earnings of the corporation and taxable at the rates for 1917.

(5) Plaintiff, in March of 1918, made a return to the defendant, as collector of internal revenue, of his income for the calendar year ending December 31, 1917; and, in pursuance of the said ruling of the Commissioner of Internal Revenue, set forth in the preceding paragraph, included in the said return the sum of $32,916, which was the dividend distributed to him by the estate of S. P. Harbison, and was his share in the dividend distributed to said estate by the Harbison-Walker Refractories Company by virtue of the resolution of the board of directors of August 3, 1917. Plaintiff also included in said return the sum of $7,860, which was the dividend distributed to him by said company upon his personal holding of stock. In the said return, plaintiff stated that said sums of $32,916 and $7,860 were reported by him under protest, for the reason that the dividend was declared on August 3, 1917, out of a surplus that had accumulated prior to March 1, 1913, and was not subject to the 1917 tax rate, nor to any income tax rate whatsoever. On June 7, 1918, plaintiff, under protest, paid to the defendant, as collector of internal revenue, the sum of $11,421.70, as income tax computed in accordance with the said return. This amount was $7,487.91 in excess of the tax due from plaintiff, had not said sums of $32,916 and $7,860, received by him as dividends from the Harbison-Walker Refractories Company, as aforesaid, been included in his return and taxed at the rate prescribed by the act of 1917 (40 Stat. 300).

(6) On December 5, 1922, plaintiff filed with the collector of internal revenue for the Twenty-Third collection district of Pennsylvania a claim for refund of the tax which he alleged was wrongfully assessed and paid by him, by reason of the inclusion by him in his tax return of the said dividends so declared on August 3, 1917, by the Harbison-Walker Refractories Company. Such claim was rejected by the Commissioner of Internal Revenue by letter under date of September 14, 1923, wherein he held that the distribution was not made until after August 6, 1917, to wit, August 25, 1917, when the amount of said dividends was paid by the Harbison-Walker Refractories Company to the plaintiff and to the estate of S. P. Harbison, as aforesaid, and that said dividends were to be considered as having been made from the current earnings of the Harbison-Walker Refractories Company for the year 1917,

and taxable at the rate prescribed by law for such year.

(7) The earnings of the Harbison-Walker Refractories Company from January 1, 1917, to August 3, 1917, the date of the declaration of the dividend referred to in the statement of claim, were sufficient to pay the dividend declared.

(8) The earnings of the Harbison-Walker Refractories Company from January 1, 1917, to January 20, 1917, the date of payment of the first regular preferred dividend, and from January 1, 1917, to March 1, 1917, the date of the payment of the first regular common dividend, were sufficient to pay each of the said dividends.

(9) Either party may, without formal proof, cite from, and refer to, congressional committee hearings, congressional committee reports, debates in Congress, amendments to the bill, and other matters connected with the legislative history of the Revenue Act of 1917, provided that the same be relevant to the question in issue.

(10) If the court is of the opinion that, under the law and the facts of the case, the plaintiff is entitled to recovery, the amount of the judgment should be $5,985.90, with interest from June 7, 1918.

The last four paragraphs are the subject-matter of a stipulation of the parties, and have been accepted by the court and incorporated among the findings of fact.

### Opinion.

The matter for determination in the instant action is the meaning of the word "distribution" as used in the last sentence of section 31(b), added to the Revenue Act of 1916, by section 1211 of the War Revenue Act of 1917 (40 St. 300, 337, 338). The sentence reads:

"This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen."

On August 3, 1917, the Harbison-Walker Refractories Company, a corporation, declared an extra dividend of 6 per cent. on its common stock, payable on August 25, 1917, from the surplus of the company accumulated prior to March 1, 1913. The Commissioner of Internal Revenue, interpreting "distribution" in the above sentence as the payment of the dividend to the stockholders, held that the distribution of the Harbison-Walker Refractories Company had been made on August 25, 1917, and not on August 3, 1917, the date of the declaration of the dividend, as

plaintiff contended. On August 25, 1917, the company had on hand profits of 1917 more than sufficient to pay the dividend declared, and the defendant, acting upon the finding of the Commissioner of Internal Revenue, collected tax from plaintiff upon his share of the dividend at the rate fixed by the Revenue Act of 1917. The plaintiff, insisting that the dividend was declared prior to August 6, 1917, from a surplus accumulated prior to March 1, 1913, and as such was free from tax, paid the amount of tax demanded under protest, and by the present suit seeks to recover it.

The issue in this action is narrow. If the distribution, as contemplated by the proviso to section 31(b), was made on August 3, 1917, plaintiff is entitled to recover; but, if it was made on August 25, 1917, judgment must be for the defendant.

The word "distribution," in the main part of section 31(b) of the Revenue Act of October 4, 1917, has recently been before the Supreme Court of the United States for interpretation. See Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235; Mason v. Routzahn, No. 152, 275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. ——, October term, 1927, decided November 21, 1927. The last-mentioned case was first heard before the District Court for the Northern District of Ohio. The question involved was the time of distribution as affecting the rate of taxation; the plaintiff contending that the date of the declaration of dividend was the date of the distribution, and the defendant insisting that the receipt of the dividend by the stockholders fixed the time. The District Court (8 F. [2d] 56) held that the date of the declaration was the time of the distribution, and that it determined the tax rate even though the dividend should be received by the stockholders when a higher rate of taxation was in force. The Circuit Court of Appeals (13 F.[2d] 702), misapprehending the scope of Edwards v. Douglas, supra, which had been decided subsequent to the decision of Mason v. Routzahn, in the District Court, reversed the lower court, holding that the payment of the dividend fixed the date of the distribution, and that the higher 1917 rate of taxation was payable—not the rate of 1916. The Supreme Court, opinion by Mr. Justice Brandeis, reversed the Circuit Court of Appeals, and sustained the District Court, but in so doing it did not specifically adopt the reasons for its decision advanced by the last-mentioned court. In Mason v. Routzahn all the dividends had been paid early in 1917. Several of them had been declared in 1916 and the rest in January, 1917. At the time of payment, as was

established by direct testimony, the corporation had no 1917 earnings with which to pay the dividends. It appearing that the dividends were actually paid from the 1916 earnings, the Supreme Court held that the tax rate for that year applied, reversing the Circuit Court of Appeals, which had erroneously held that, if the dividends were paid in 1917, the earnings for the whole of that year should be found, and, in case such earnings were sufficient to pay all the dividends paid within the year, the dividends must be deemed to have been paid from them. Touching upon the main question which counsel sought to have the court decide—as to whether the rate of taxation was determined by the declaration or payment of the dividend, in event of sufficient current earnings to pay the tax—the court, by Mr. Justice Brandeis, said:

"Since two of the dividends paid in 1917 were declared in 1916, it becomes necessary for us to consider whether these also are to be deemed distributions made in 1917, as it is only to such that the section applies. It declares that the dividend is income of the shareholders in the year in which it is 'received.' We think it clear that, for this purpose, the date of payment, not the date of the declaration of the dividend, is the date of distribution; and, as all the dividends here in question were paid in 1917, the provision as to the rate is applicable to all. As there were no earnings in 1917 prior to the dates of the payments, and as there were confessedly ample accumulated earnings of 1916 prior to the declaration of the several dividends, we have no occasion to consider other questions which were argued. The judgment of the Circuit Court of Appeals is reversed; that of the District Court is affirmed."

Shortly after the opinion in Mason v. Routzahn, supra, was handed down, the Circuit Court of Appeals for this Circuit decided United States v. Phillips, No. 3485, 24 F.(2d) 195, October term, 1927. The facts of that case were very similar to those in Mason v. Routzahn. The District Court (12 F.[2d] 598) had held that the rate of taxation was determined by the time of the declaration, not the payment, of the dividend, and had found for the plaintiff. The Court of Appeals reversed this judgment, citing Mason v. Routzahn as authority for the proposition that "distribution" (in that part of section 31(b) of the Revenue Act of 1917 which declares that "distribution" made to stockholders "in the year 1917 * * * shall be deemed to have been made from most recently accumulated undivided profits or surplus") indicates the time of receipt by the stockholders, and not the time of the declaration of the dividend by the directors. In passing upon the issues of United States v. Phillips, the Court of Appeals, by Judge Woolley, said:

"The question on the second ground for increasing the assessment had its rise in opposite meanings which the parties attributed to the words of subsections (a) and (b) of section 31 of the Revenue Act of 1916, as amended by the Revenue Act of 1917 (40 Stat. 338, 377 [Comp. St. § 6336z]), the first of which declares the term 'dividends' to mean any 'distribution' made or ordered by a corporation out of its earnings or profits, and the second provides that any 'distribution' made to stockholders 'in the year 1917 * * * shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received.' The question, regarded by the trial court as one purely of law, was whether distribution should be considered made when the dividend is declared, as contended by the plaintiff, or when the dividend is paid, as contended by the government. The learned trial court held that distribution occurs when the dividend is declared. That question is now ruled adversely to the plaintiff by the decision of the Supreme Court in Mason v. Routzahn, Collector [275 U. S. 175], 48 S. Ct. 50, 72 L. Ed. —, following a related decision in Edwards, Collector v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235, wherein that court held that 'the date of payment, not the date of the declaration of the dividend, is the date of distribution.'"

From the foregoing it is apparent that it would be our duty, were we passing upon the meaning of the word "distribution" in section 31(b), as determining the rate of taxation, to hold that it refers to the time of the receipt of the dividend by the stockholders rather than to the declaration of it. In holding that the word, as used in the exemption proviso attached to section 31(b), has a different meaning, we trust it will be distinctly understood that we are not undertaking to disregard the authority of the Court of Appeals or to question the accuracy of its decision. As it seems to us, the legislative history of the proviso makes it plain that Congress, no matter what the meaning given to the word "distribution" in the other part of the section, had the declaration of the dividend in mind in its use in the exemption clause.

Corporation profits accumulated prior to

March 1, 1913, are not subject to income tax. In construing the first Income Tax Act (38 Stat. 114), the Circuit Court of Appeals for the Second Circuit (United States v. Guinzburg, 278 F. 363) held a dividend declared before March 1, 1913, payable on July 1, 1913, to be a capital account and so free of income tax in the hands of a stockholder. Shortly before that decision, however, came Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, which held a dividend from profits accumulated prior to March 1, 1913, declared and paid after that date, to be taxable income of the stockholder. Congress, without doubt having this case in mind, to protect dividends from accumulations antedating March 1, 1913, from such attack as was successful in Lynch v. Hornby, enacted section 2(a) of the Revenue Act of 1916 (Comp. St. § 6336b[a]), which permitted corporations to declare dividends from March 1, 1913, accumulations tax free to the stockholder. Section 2(a) of the Act of 1916 is as follows:

"That the term 'dividends,' as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint-stock company, association, or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen."

Section 2(a) of the Act of 1916 (Comp. St. § 6336b(a) was re-enacted in section 31(a), as added by section 1211 of the War Revenue Act of 1917; Comp. St. § 6336z(a). Subsequent to its first passage, and prior to the proposal of section 31(b) as a law, corporations declared dividends upon March 1, 1913, surplus which were free of tax. This immunity from tax led to certain difficulties. Dividends were declared from profits accumulated prior to March 1, 1913, not from large current earnings, and the government secured no taxes upon them. To meet this condition, section 31(b), without the exemption proviso in question in the instant case, was conceived. It first came to public notice when reported to the Senate by Senator Simmons, chairman of the Senate Finance Committee. With the proposed Revenue Act was a report which called attention to the changes proposed, among them the subject-matter of section 31(b).

When the proposed section was called to public attention, many protests were filed with the Conference Committee. The chief source of complaint was the retroactive feature of the proposed act. Many corporations, acting under section 2(a) of the Act of 1916, with the acquiescence of the Bureau of Internal Revenue, had declared dividends in 1917 from March 1, 1913, surplus. The proposed law was retroactive, and would have affected many dividends declared subsequent to January 1, 1917. Those dividends, instead of being tax free, as thought at the time they were declared, would be subject not only to tax, but to a much larger tax than had theretofore been laid. In view of the surprise feature of the proposed enactment, and the fact that many stockholders relying upon existing law would be subject to a tax, wholly unexpected and unprecedentedly large, upon dividends which might already have been expended, it was felt that the proposed change was exceedingly unfair, and possibly could not be sustained in law.

Congress gave heed to the protests against this retroactive feature, and, when the bill came from the Conference Committee, it contained section 31(b) in its present form, with its exemption of all distributions prior to August 6, 1917. In discussing the act on the day of its passage by the Senate, Senator Simmons (Congressional Record, Sixty-Fifth Congress, p. 7615) said:

"Under existing law and in the House bill the accumulated surplus of corporations when distributed, whether in cash or in stock, become subject to surtax of the stockholder receiving it unless the surplus thus distributed was accumulated prior to March 1, 1916 (1913), the date of the adoption of the income tax amendment to the Constitution. Surplus acquired before that date is not and cannot be subject to an income tax of any kind. In this condition of the law it was clearly to the interest of the corporation to distribute its surplus accumulated before 1913 instead of that more recently accumulated."

"In order to be just to the corporations and at the same time to encourage them to distribute their annual earnings, your committee reported to the Senate and the Senate adopted an amendment providing that the surplus when distributed shall be taxed to the distribution (distributee) at the rate prescribed by law for the year in which they were earned, but also provided that any distribution of surplus made in 1917 or subsequent tax years should be deemed to have been made from the most recently accumulated undivided profits, thereby making it necessary for the corporation to distribute its surplus earned since March 1, 1913, before that earned prior to that time."

"The conferees agreed to these amendments, but added an amendment to the effect that the later amendment—that is to say, the one requiring the distribution to be made

from the most recently acquired surplus—should not apply to any distribution made prior to August 1 (6), 1917, out of earnings accrued prior to March 1, 1913."

The reason for exemption of distributions of March 1, 1913, profits, made prior to August 6, 1917, is plain. August 6, 1917, was the date upon which section 31 (b) was called to public attention by report of the Finance Committee of the Senate. If corporations, after such notice of the proposed enactment, declared 1913 dividends, they did so with knowledge of the possibility that such dividends would be subject to the high 1917 tax rate. Before that date no notice of the section had been given, and all dividends theretofore declared in good faith were entitled to the protection of Congress.

In view of the circumstances of, and the reasons for, the addition of the proviso by which distributions of March 1, 1913, accumulations were exempted from taxation if made prior to August 6, 1917, it is inconceivable that Congress intended "to be just to" some corporations which had been misled by its previous actions, and to allow others, in practically the same situation, to suffer the effects of a retroactory law. Such an intention would have to be presumed if the word "distribution" in the exemption is construed to mean the payment of the dividend to the stockholders rather than the declaration of it. In the instant case the interpretation would mean the imposition of a heavy tax upon a dividend which had been declared by a corporation in the well-founded belief that it was free of tax. The declaration of the dividend bound the corporation, which could revoke it for no reason short of fraud. It is plain, we think, in view of the purpose of the addition of the proviso to the section, that Congress did not intend the inequality of treatment attributed to it, but did intend to protect all dividends declared in good faith before notice had been given of any proposed change of law.

In arriving at the foregoing conclusion, we have not ignored the general rule of construction that, when a word has been used several times, and in different connections, in a statute, the same meaning of it is to be presumed throughout. The present statute, it would seem, furnishes an example of a well-defined exception to the rule. The rule is of great force when the word to be interpreted is found in a statute prepared by one person and all parts thereof joined together at about the same time. But that is not the case presented by the proviso to section 31(b). The proviso was not in the original

section in any form. To remedy a bad feature of the original draft of the act, it was added while the bill was before the Conference Committee, and did not publicly appear until October 2, 1917, the day before the act was passed. This fact in itself weakens the presumption, and, when considered in connection with the evil sought to be remedied by the proviso, has tended to take away any difficulty in arriving at our conclusion that Congress, by the use of the word "distribution" in the proviso, intended the declaration of the dividend rather than its payment.

This conclusion requires the entry of judgment in favor of the plaintiff.